```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

```
CARMELO MARTINEZ,            :    Hon. Noel L. Hillman
                             :
        Plaintiff,           :
                             :
     v.                      :    Civil Action No. 02-0927
                             :
DEBORAH PETERS,              :
                             :    OPINION
        Defendant.           :
```

This matter has come before the Court on Defendant's motion for summary judgment on Plaintiff's constitutional violation claim brought pursuant to 42 U.S.C. § 1983. For the reasons set forth below, Defendant's motion will be granted.

## BACKGROUND

Plaintiff, Carmelo Martinez, filed a Complaint against numerous defendants claiming that the defendants violated his constitutional rights relating to the dialysis treatment he received while he was an inmate at South Woods State Prison. By Court order on August 13, 2002, all claims and defendants were dismissed except for Plaintiff's retaliation claim against Deborah Peters. Plaintiff claims that Peters, a nurse in the prison's dialysis unit, retaliated against him for exercising his First Amendment right to redress his grievances about his medical treatment. Peters now moves for summary judgment on Plaintiff's claim against her.

**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has

2

met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.    Plaintiff's Retaliation Claim**

Plaintiff claims that Defendant retaliated against him because of his written grievances to prison officials about Defendant's mistreatment of him in the dialysis unit. Plaintiff's first grievance letter about Defendant was sent to "Ms. V. Bartha Quality Assurance Specialist" on June 4, 2001. In his letter, Plaintiff complained that Defendant called him out of his new work detail for dialysis when previously she had worked around his work and school schedule, and when she could have easily called in another patient. (Martinez Dep. at 24-25; Martinez Letter, Pl.'s Ex. 1.)

Following his first grievance letter about Defendant, Plaintiff claims that on June 22, 2001 Defendant deliberately placed him on a machine that she knew had failed on the previous patient. (Martinez Dep. at 39; Martinez Letters, Pl.'s Ex. 3,

3

4.) Plaintiff contends that he was taken off the machine after three failures and with one hour remaining of his necessary treatment time. (Martinez Dep. at 49; Martinez Letter, Pl.'s Ex. 3.) Plaintiff again wrote a grievance letter to Ms. Bartha, and he also wrote a letter to the New Jersey Department of Law and Public Safety. (Martinez Letters, Pl.'s Ex. 3, 4.)

Plaintiff claims that on June 27, 2001 he was told by another nurse, "through Ms. Peters," to sign a "refusal slip" for the remainder of the treatment he did not receive. (Martinez Dep. at 49; Martinez Letter, Pl.'s he did not "refuse" treatment, but rather he could not complete treatment because the machine failed. (Martinez Dep. at 49-52.) On July 1, 2001, Plaintiff wrote a letter to Ms. Bartha to complain that "Ms. Peters was going to commit perjury by falsifying my records to cover her wrong doings." (Martinez Letter, Pl.'s Ex. 5.)

Plaintiff also contends that on July 30, 2001 Defendant again changed his dialysis schedule "for no apparent reason other than Ms. Peters[] doing so in retaliation." (Martinez Letter, Pl.'s Ex. 2.) Plaintiff claims that Defendant called him for dialysis, but when he arrived he was told to come back later. (Martinez Dep. at 54-58.) Plaintiff claims that he returned at 6:00pm later that day, but he had to wait an hour before treatment because all the machines were full. (Id. at 58.) Plaintiff contends that Defendant making him walk "up once, then

back, and up again" the three city blocks to dialysis when Defendant knew the unit was not ready to treat him was in retaliation for his letters. (Id. at 56.)  Plaintiff also contends that his hour-long wait was retaliation because Defendant wanted Plaintiff "to sit there rather than [be] comfortable in my cell."  (Id. at 59.)  Plaintiff filed an "Administrative Remedy Form" to complain.  (Pl.'s Ex. 6.)

Finally, Plaintiff claims that on September 10, 2001 Defendant, "with no reason," told him not to report for his next scheduled dialysis treatment, which was in the morning two days later.  (Martinez Dep. at 59-61; Martinez Letter, Pl.'s Ex. 8.)  Plaintiff claims that at 12:15pm he was called to dialysis, but he could not report because he had to turn in his word processor in order to receive a new one.  (Id.)  Plaintiff was then told to come at 3:30pm.  (Id.)  When he arrived, Defendant was ready to begin Plaintiff's treatment, but Plaintiff refused and asked to be treated by another nurse.  (Id.)  Plaintiff was not treated by another nurse, and was "locked up in the infirmary" for observation until his next dialysis.  (Martinez Dep. at 63-64.)  Plaintiff again wrote a letter to Ms. Bartha to complain.  (Martinez Letter, Pl.'s Ex. 8.)

**C.   Standard for a First Amendment Retaliation Claim**

In order to make out a claim for relief for a retaliation claim, a prisoner must first establish that he engaged in

constitutionally-protected activity.  Rauser v. Horn, 241 F.3d 330, 332 (3d Cir. 2001).  Second, he must establish that he suffered some adverse action at the hands of prison officials. Id.  The adverse action must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).  Next, the prisoner must demonstrate a causal connection between the constitutionally-protected activity and the adverse action. Rauser, 241 F.3d at 333.  The prisoner bears the initial burden of showing that his constitutionally-protected activity was a substantial or motivating factor for the adverse action; then the burden shifts to the defendant to show that it would have taken the same disciplinary action absent the constitutionally-protected activity.  Id.

**D.   Analysis of Plaintiff's Claim**

Defendant does not contest that Plaintiff engaged in a constitutionally-protected activity when he wrote grievance letters to prison officials about Defendant's alleged conduct. See Quinn v. Cunningham, 879 F. Supp. 25, 27-28 (E.D. Pa. 1995), aff'd, 85 F.3d 612 (3d Cir. 1996) (holding that an inmate filing a grievance with prison officials engages in activity protected by the First Amendment).  Thus, Plaintiff has met the first element for a retaliation claim.

Plaintiff fails, however, to meet the other two elements of

a claim for retaliation.  First, Plaintiff did not suffer adverse action at the hands of Defendant that was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.  A review of Plaintiff's grievances demonstrates four alleged acts of retaliation by Defendant in response to his first grievance letter filed on June 4, 2001: 1) Defendant deliberately placed him on a failing dialysis machine; 2) Defendant, through another nurse, told Plaintiff to sign a "refusal slip"; 3) Defendant changed his dialysis schedule for "no apparent reason," and as a result, he had to walk three city blocks back and forth, as well as wait an hour for treatment later in the day; and 4) Defendant again changed his dialysis schedule for "no reason."  After every alleged adverse action, Plaintiff wrote a grievance letter to prison officials to complain about Defendant.  Thus, even if Plaintiff considered these incidents to be adverse actions, they certainly did not deter him from exercising his First Amendment rights.

   Second, Plaintiff has not demonstrated any causal connection between his grievance letters and Defendant's actions.  With regard to Plaintiff's claim that Defendant deliberately placed him on a malfunctioning machine in response to his June 4, 2001 letter, Plaintiff also states in his June 22, 2001 letter that the dialysis machines had been breaking down on other patients, two machines were down currently, and that one nurse threatened

7

to quit due to frustration over malfunctioning machines. (Martinez Letter, Pl.'s Ex. 3.)  Additionally, even though Plaintiff claims that Defendant chose him specifically to go onto the malfunctioning machine, Plaintiff testified that he usually went onto the same machine that another inmate, Timothy Hudson, used, and that happened to be the machine that was malfunctioning that day.  (Martinez Dep. at 42.)  Thus, on this claim of adverse action, Plaintiff has failed to demonstrate that Plaintiff's grievance letter resulted in Defendant's action.

Next, with regard the "refusal slip" issue, Plaintiff testified that another nurse asked him to sign the slip. (Martinez Dep. at 52.)  Even though Plaintiff assumed that Defendant directed the other nurse to ask Plaintiff to sign the slip because he saw them talking(id.), it is not sufficient to prove that Plaintiff's letters caused Defendant to take any action.

Finally, Plaintiff's claims that Defendant changed his dialysis schedule and made him wait for a vacant machine "for no apparent reason" other than retaliation does not demonstrate that Defendant acted in retaliation.  As was stated previously, a party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.

Consequently, even though Plaintiff engaged in protected activity by writing grievance letters to prison officials, he has

8

not proven that his letters caused Defendant to take adverse action against him.

## CONCLUSION

For the reasons expressed above, Defendant is entitled to judgment as a matter of law.  An appropriate Order will be entered.


Dated: September 25, 2006          s/ Noel L. Hillman
Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.